# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LUCILLE GREENE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C. A. No.  04-1297 (SLR) |
| | ) |
| UNITED STATES POSTAL SERVICE, | ) |
| | ) |
| Defendant. | ) |

## PRETRIAL STIPULATION AND ORDER

1. A STATEMENT OF THE NATURE OF THE ACTION, THE PLEADINGS IN WHICH ISSUES ARE RAISED AND WHETHER COUNTERCLAIMS, CROSSCLAIMS ARE INVOLVED.

This is a personal injury action brought by the Plaintiff, alleging that the Defendant intentionally or negligently inflicted emotional distress upon her on December 17, 2002. Plaintiff alleges that when she went to the post office to mail some fruit cakes, the conduct of United States Postal Service employee James Maurer was so outrageous that she left the counter in tears and upset and on her way to her vehicle she failed to observe a parking stopper, tripped over it and injured her knees, the side of her face and her tooth. She claims she has suffered permanent injuries as a result of her injury. The Defendant denies liability. Mr. Maurer asserts that he did not engage in any outrageous conduct so as to subject Defendant to liability for negligent or intentional infliction of emotional distress, that he was just doing his job asking Plaintiff appropriate questions, and that she completely overreacted.

2. A CONSTITUTIONAL OR STATUTORY BASIS OF FEDERAL JURISDICTION, TOGETHER WITH A BRIEF STATEMENT OF THE FACTS SUPPORTING SUCH JURISDICTION.

Jurisdiction is based upon 28 U.S.C. § 1331 and 28 U.S.C. § 1346. This is an action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. (the "FTCA"), against the United States.

3. A STATEMENT OF THE FACTS THAT ARE ADMITTED AND REQUIRE NO PROOF.

A. On December 17, 2002, Plaintiff went to the post office in Magnolia, Delaware, to mail a package.

B. Mr. James Maurer was the postal clerk with whom she had the encounter that is the subject matter of this lawsuit.

C. Pursuant to Postal Service regulations, it is the mailer's responsibility to ensure that a parcel is properly packaged and marked for mailing.

4. A STATEMENT OF THE ISSUES OF FACT THAT ANY PARTY CONTENDS REMAIN TO BE LITIGATED.

PLAINTIFF'S STATEMENT OF FACTS TO BE LITIGATED.

A. What exactly was the conversation between Plaintiff and Mr. Maurer on December 17, 2002, concerning the fruit cakes?

B. Did the conduct of Mr. Maurer go beyond what is rude conduct and constitute either negligent or intentional infliction of emotional distress?

C. Should a reasonable person have realized that the manner of the questioning of the Plaintiff would so upset Plaintiff that it was foreseeable that she might have difficulty either going

down the stairs or observing any obstacles on the way to her car?

  D.  Is Mr. Maurer's testimony credible?

DEFENDANT'S STATEMENT OF FACTS TO BE LITIGATED

  A.  What markings were on the package Plaintiff presented for mailing?

  B.  What are the proper procedures to be followed by a Postal clerk when presented with a box bearing those markings?

  C.  What words did Mr. Maurer use?

  D.  What was Mr. Maurer's demeanor and tone?

  E.  Did Plaintiff experience severe emotional distress?

  F.  Was any emotional distress that Plaintiff experienced the result of conduct by other individuals rather than (or in addition to) Mr. Maurer?

  G.  Did Mr. Maurer's actions, in fact, assist Plaintiff by rendering her package mailable?

  H.  Was Plaintiff ever in the "zone of danger" where she was threatened with physical harm?

  I.  Did Mr. Maurer intentionally or recklessly engage in conduct so outrageous so as to subject Defendant to liability for intentional infliction of emotional distress?

  J.  Did Plaintiff exercise due care when she left the post office?

5.  A STATEMENT OF THE ISSUES OF LAW THAT ANY PARTY CONTENDS REMAIN TO BE LITIGATED AND A CITATION OF AUTHORITIES RELIED UPON BY EACH PARTY.

PLAINTIFF'S STATEMENT OF ISSUES OF LAW TO BE LITIGATED

  A.  Do the allegations of Plaintiff, if accepted as true, constitute negligent or intentional infliction of emotional distress? In Sabow v. United States, 93 F.3d 1445 (9th Cir. 1996), the court held that action constituting intentional infliction of emotional distress constituted an underlying claim for which the Federal Tort Claims Act would provide a remedy. See also Truman v. United

3

States, 26 F.3d 592 (5th Cir. 1994).

    B.    The State of Delaware recognizes the tort of negligent or intentional infliction of emotional distress. See Thomas v. Hartford Mutual Insurance Co., 2003 Westlaw 22051 (Del. Super.); Cummings v. Pinder, 574 A.2d 843 (Del. 1990).

DEFENDANT'S STATEMENT OF ISSUES OF LAW TO BE LITIGATED

    A.    Pursuant to the FTCA, the United States "shall be liable in the same manner and to the same extent as a private individual" under state law. 28 U.S.C. § 2674. As set forth below, Defendant respectfully submits that Plaintiff has raised no genuine issue as to any material fact and that Defendant is entitled to a judgment as a matter of Delaware law on Plaintiff's claims. Fed. R. Civ. P. 56(b). Accordingly, Defendant respectfully requests that the Court consider granting summary judgment for Defendant at the conclusion of the pre-trial conference.

    B.    To recover for negligent infliction of emotional distress under Delaware law, Plaintiff must show that during the incident she was within the zone of danger of physical harm. See, e.g., Pritchett v. Delmarva Builders, Inc., No. 97C-03-011, 1998 WL 283376, at *4 (Del. Super. Ct. Feb. 27, 1998) (dismissing claim for negligent infliction of emotional distress because the plaintiffs did not allege that the defendant's conduct placed them in the zone of danger where there existed a risk of physical injury to the plaintiffs); Rea v. Midway Realty Corp., No. 88C-JL6, 1989 WL 100452, at *4 (Del. Super. Ct. Aug. 23, 1989) ("Thus, on the facts of this case, there is no basis for a negligent infliction of emotional distress claim since the case did not involve any act which would have caused plaintiffs to fear for their own safety.").

Here, Plaintiff does not claim that she was ever in the zone of danger of physical harm. Rather, Plaintiff admitted during her deposition that Mr. Maurer did not threaten Plaintiff. (Green Dep. at 31 (excerpts attached as Exhibit A).) According to Plaintiff, during the incident Mr. Maurer could not even reach Plaintiff because the counter separating Plaintiff and Mr. Maurer was too wide.

4

(Id.)  Plaintiff was not frightened by Mr. Maurer; rather, she "wanted to hit him."  (Id. at 32.)  Because Plaintiff was never in the zone of danger of physical harm, she cannot recover for negligent infliction of emotional distress.

What Plaintiff does claim is that Mr. Maurer inflicted severe emotional distress upon Plaintiff when he was too rough with the package that Plaintiff wanted to mail.  Plaintiff claims Mr. Maurer pointed to certain markings on Plaintiff's package and asked her if the package contained explosives.  (Id. at 7; 30.)  "He slammed [the package] down and kept repeating this."  (Id. at 30.)  Mr. Maurer also "took [her] package and he kept shaking them, shaking them."  (Id. at 7.)  Mr. Maurer ultimately accepted Plaintiff's package for mailing.  (Id. at 32.)  Plaintiff then left the post office.  (Id. at 33.)  According to Plaintiff, as a result of Mr. Maurer's actions, the fruit cakes inside Plaintiff's package were damaged.  (Id. at 14.)  She felt "terrible" and "embarrassed" and was crying.  (Id. at 32-33.)

Even if Plaintiff's allegations are true -- and Defendant disputes those allegations -- Plaintiff's negligent infliction of emotional distress claim would still fail because Delaware law does not allow a plaintiff to recover for negligent infliction of emotional distress "caused solely by damage to the plaintiff's property absent an impact or zone of danger risk even if such mental distress produces significant physical consequences or injuries."  Delmarva Builders, 1998 WL 283376, at *3.  In Delmarva Builders, the court discussed a hypothetical of a friend who carelessly destroyed a vase that was a family heirloom of great sentimental value to its owner.  The court explained that the friend would not be liable to the owner for any emotional distress the owner suffered as a result if the owner was never in the zone of danger of physical harm.  Id. at *4 ("Under these facts, it is clear that the friend is on notice of the value of the vase to its owner and could foresee the mental anguish which the owner would suffer if the vase were to be destroyed.  But would not the damage exposure in this case be out of all proportion to the culpability of the friend in respect to a momentary, inadvertent act of omission?").

5

Accordingly, here Defendant cannot be liable for mental distress suffered by Plaintiff -- even if that distress was caused by Mr. Maurer's careless handling of her package -- because Plaintiff was never in fear for her own physical safety. The only things that were ever in danger were the fruit cakes. Accordingly, as a matter of law, Plaintiff's negligent infliction of emotional distress claim must fail.

C. Even if the Court finds that the "zone of danger" test does not apply to the facts of this case, Plaintiff's negligent infliction of emotional distress claim would still fail because her physical injuries are not phenomena brought about by her alleged "emotional distress." To recover for negligent infliction of emotional distress under Delaware law, Plaintiff must show that her emotional distress manifested as a physical injury. See, e.g., Lloyd v. Jeffereson, 53 F. Supp. 2d 643, 676 (D. Del. 1999); Lupo v. Med. Ctr. of De., Inc., No. 94C-09-049, 1996 WL 111132, at *3 (Del. Super. Ct. Feb. 7, 1996). Thus, "where the physical phenomena accompanying emotional disturbance are transitory and non-recurring they do not amount to the physical injury needed for recovery under a negligent infliction of emotional distress claim." Lloyd, 53 F. Supp. at 676 (quoting RESTATEMENT (SECOND) TORTS § 436A).

Here, there is no evidence that Plaintiff's alleged "emotional distress" manifested as a physical injury. All Plaintiff claims is that after the incident with Mr. Maurer she felt "terrible" and "embarrassed," and started to cry. (Green Dep. at 32-33.) That does not suffice. See, e.g., Lupo, 1996 WL 111132, at *4 (sustaining claim for negligent infliction of emotional distress because plaintiff pointed to evidence that she "suffered substantial, recurring episodes of sleeplessness, nightmares, headaches, eating disorders, clinical depression, irritability, rage, crying spells and mental distress which, according to their psychologist, have in varying degrees persisted over three years and are still on-going"); compare Lloyd, 53 F. Supp. at 675-76 (granting summary judgment and dismissing plaintiff's negligent infliction of emotional distress claim because the injury to

6

plaintiff's arm was "not a 'physical phenomena accompanying emotional distress'"). Accordingly, Plaintiff's negligent infliction of emotional distress claim should be dismissed.

      D.     To recover for intentional infliction of emotional distress under Delaware law, Plaintiff must show that Mr. Maurer engaged in outrageous conduct. See, e.g., Avallone v. Wilmington Med. Ctr., Inc., 553 F. Supp. 931, 938 (D. Del. 1982). "[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . [P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Id. (quoting RESTATEMENT (SECOND) TORTS § 46, cmt. d). Rather, Defendant can only be liable for intentional infliction of emotional distress if Mr. Maurer's conduct was "so outrageous in character and so extreme in degree, as to be beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id.

There is no evidence that Mr. Maurer's conduct was sufficiently outrageous to meet that high standard. Plaintiff claims Mr. Maurer pointed to certain markings on her package, asked Plaintiff if the package contained explosives, and repeatedly shook the package. (Green Dep. at 7-8.) Mr. Maurer allegedly asked Plaintiff to read a poster on the wall, but Plaintiff refused. (Id. at 8; 18.) Mr. Maurer slammed the package, crossed out some markings, and ultimately accepted the package for mailing. (Id. at 30, 32.) He did not swear at Plaintiff. (Id. at 30.) He did not throw anything at Plaintiff. (Id. at 31.) He did not threaten Plaintiff. (Id.) He did not touch Plaintiff. (Id.) After the incident, Plaintiff felt "terrible" and "embarrassed" but was not "frightened." (Id. at 32.)

Assuming Plaintiff's allegations are true -- which Defendant disputes -- Mr. Maurer's acts could be considered, at worst, inconsiderate and unkind, but not so outrageous as to subject Defendant to liability for intentional infliction of emotional distress. Cf. Mandelaka v. Boyd, No. 93C-03-198, 1993 WL 258798, at *1 (Del. Super. Ct. June 14, 1993) (dismissing complaint because

7

allegations that defendant treated plaintiff in a "hostile manner," "mistreated" plaintiff, told plaintiff to "shut up," and directed a racial slur at plaintiff did not show outrageous conduct sufficient to state a claim for intentional infliction of emotional distress).

    E.    To recover for intentional infliction of emotional distress under Delaware law, Plaintiff must show that she suffered "extreme emotional distress." Beckett v. Trice, No. 92C-08-029, 1994 WL 710874, at *5 (Del. Super. Ct. Nov. 4, 1994). Allegations that a plaintiff suffered "humiliation, embarrassment and anxiety" do not suffice to show extreme emotional distress. Id.; see also RESTATEMENT (SECOND) TORTS § 46, cmt. j ("The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity."); Hostetter v. Hartford Inc. Co., No. 85C-06-28, 1992 WL 179423, at *10 (Del. Super. Ct. July 13, 1992) (granting summary judgment and finding no evidence of emotional distress because all the plaintiff alleged was that she "experienced sleep problems due to nightmares, anxiety, depression, increased cigarette and alcohol use").

There is no evidence that Plaintiff suffered extreme emotional distress "that no reasonable man could be expected to endure." All Plaintiff alleges is that Mr. Maurer made her feel "terrible" and "embarrassed," and that she started to cry. (Green Dep. at 32-33.) Plaintiff does not allege that she was "frightened." (Id.) Nor does Plaintiff allege that her "emotional distress" lasted any longer than the time it took for her to leave the Magnolia post office and walk to her car. See RESTATEMENT (SECOND) TORTS § 46, cmt. j ("The intensity and the duration of the distress are factors to be considered in determining its severity.") (emphasis added).

"There is no occasion for the law to intervene in every case where some one's feelings are hurt." RESTATEMENT (SECOND) TORTS § 46, cmt. d. Here, all Plaintiff has alleged is that she suffered hurt feelings. Accordingly, Plaintiff's intentional and negligent infliction of emotional

8

distress claims should be dismissed.

    F.    For all of these reasons, Defendant respectfully submits that Plaintiff has raised no genuine issue as to any material fact and that Defendant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(b).

6.    A LIST OF PRE-MARKED EXHIBITS INCLUDING DESIGNATIONS OF INTERROGATORIES AND ANSWERS THERETO, REQUESTS FOR ADMISSIONS AND RESPONSES, WHICH EACH PARTY INTENDS TO OFFER AT THE TRIAL. THE SPECIFICATION OF THOSE THAT WILL BE ADMITTED TO EVIDENCE WITHOUT OBJECTION, THOSE THAT WILL BE OBJECTED TO AND THE FEDERAL RULE OF EVIDENCE IN SUPPORT OF SAID OBJECTION AND THE FEDERAL RULE OF EVIDENCE RELIED UPON BY A PROPONENT OF THE EXHIBIT.

PLAINTIFF'S EXHIBITS

    A.    Pictures of the site where Plaintiff was injured.

        No objection.

    B.    Pictures taken of Plaintiff shortly after her injury.

        No objection.

    C.    Medical records of Dr. Schwartz.

        No objection.

    D.    Medical report of Dr. Schwartz dated September 15, 2005.

        No objection.

    E.    Medical bills incurred by Plaintiff.

        No objection.

DEFENDANT'S EXHIBITS

    A.    Excerpts of "Publication 52, Hazardous, Restricted and Perishable Mail."

      No objection.

7. THE NAMES AND ADDRESSES OF ALL WITNESSES A PARTY INTENDS TO CALL TO TESTIFY EITHER IN PERSON OR BY DEPOSITION AT THE TRIAL AND SPECIALTIES OF EXPERTS TO BE CALLED AS WITNESSES.

PLAINTIFF'S WITNESSES

    A.    Plaintiff intends to introduce into evidence the deposition of Dr. Schwartz, the orthopedic surgeon who treated Plaintiff.

      No objection.

    B.    Plaintiff, Lucille Green.

    C.    Karen Ward, Postmaster, Magnolia.

      Objection B Fed. R. Evid. 802 (hearsay); Fed. R. Evid. 402 (relevance).

    D.    Ruth Pew

      Objection B Fed. R. Evid. 802 (hearsay); Fed. R. Evid. 402 (relevance).

    E.    Rena Ward will probably be a rebuttal witness. (She has personal knowledge of the demeanor of Mr. Maurer.)

      Objection B Fed. R. Evid. 802 (hearsay); Fed. R. Evid. 402 (relevance).

DEFENDANT'S WITNESSES

    A.    James Maurer

8. A BRIEF STATEMENT OF WHAT PLAINTIFF INTENDS TO PROVIDE IN SUPPORT OF PLAINTIFF'S CLAIMS, INCLUDING THE DETAILS OF THE DAMAGES CLAIMED, OR OTHER RELIEF SOUGHT, AS OF THE DATE OF PREPARATION OF THE DRAFT ORDER.

Plaintiff intends to prove that the conduct of the James Maurer, an employee of the United States Postal Services, constituted negligent or intentional infliction of emotional distress. Plaintiff will prove that Mr. Maurer taunted Plaintiff and knew or should have known that his questioning and

treatment of her concerning the mailing of two fruit cakes rose to the level of outrageous and that it was foreseeable that with such conduct that Plaintiff, an 85-year-old woman, would be upset and might trip or fall if there were steps or any other obstacles. (Foreseeability does not require Plaintiff that the exact kind of injury that might result, but rather a general risk of harm.) Plaintiff will produce medical evidence from Dr. Schwartz that she suffered permanent injuries to her leg. She will also provide testimony that she injured her tooth and lost her ring.

9.      A BRIEF STATEMENT OF WHAT THE DEFENDANT INTENDS TO PROVE IN HIS DEFENSE.

Defendant intends to prove that Mr. Maurer did not engage in any conduct that was sufficiently outrageous so as to subject Defendant to liability for negligent or intentional infliction of emotional distress. Plaintiff handed Mr. Maurer a package bearing the marking "ORM-D," identifying its contents as regulated material, requiring special packaging and handling. Plaintiff apparently took offense at Mr. Maurer's proper (indeed, mandatory) inquiry regarding the contents of Plaintiff's package. When Mr. Maurer became persuaded that the contents of the package were not "regulated material," he properly obliterated the ORM-D marking, and accepted the package for mailing.

Accordingly -- even accepting Plaintiff's allegations -- Mr. Maurer's conduct was at most rude, which is not enough to subject Defendant to liability for intentional infliction of emotional distress. Moreover, Mr. Maurer was merely following United States Postal Service guidelines during the incident, meaning he could not have intentionally or recklessly inflicted severe emotional distress on Plaintiff.

Defendant also intends to prove that Plaintiff was never in the zone of danger of physical harm, and, alternatively, that Plaintiff's alleged emotional distress did not manifest as a physical injury. As a result, Defendant cannot be liable for negligent infliction of emotional distress.

11

Finally, Defendant intends to prove that -- even accepting Plaintiff's allegations -- Plaintiff merely suffered embarrassment and hurt feelings as a result of the incident with Mr. Maurer, not severe emotional distress. Accordingly, Defendant cannot be liable for intentional or negligent infliction of emotional distress.

10.   STATEMENTS BY COUNTERCLAIMANTS OR CROSSCLAIMANTS COMPARABLE TO THAT REQUIRED BY PLAINTIFF

Not applicable.

11.   ANY AMENDMENTS TO THE PLEADINGS DESIRED BY ANY PARTY WITH A STATEMENT WHETHER IT IS UNOPPOSED OR OBJECTED TO AND THE GROUNDS THEREOF.

Not applicable.

12.   CERTIFICATION THAT A TWO-WAY COMMUNICATION HAS OCCURRED BETWEEN PERSONS HAVING THE AUTHORITY IN GOOD FAITH EFFORT TO EXPLORE THE RESOLUTION OF THIS CONTROVERSY BY SETTLEMENT.

The parties have met at mediation but were unable to come to a settlement.

13.   ANY OTHER MATTERS THAT THE PARTIES DEEM APPROPRIATE.

Plaintiff received Defendant's pre-trial at 1:45 p.m. on Monday, October 24, 2005. Defendant has raised legal issues for the first time and has asked for summary judgment. Plaintiff seeks leave to supplement the pre-trial with a response to the legal issues raised by Defendant.

**THIS ORDER** shall control the subsequent course of the actions unless modified by the court to prevent manifest injustice.

| | |
|---|---|
| /s/ John S. Grady | /s/ Patricia Hannigan |
| John S. Grady (DE I.D. No. 009) | Patricia Hannigan (DE I.D. No. 2145) |
| GRADY & HAMPTON, LLC | Assistant United States Attorney |
| | District of Delaware |
| Attorney for Plaintiff | |
| | /s/ Seth M. Beausang |
| | Seth M. Beausang (DE I.D. No. 4071) |
| | Assistant United States Attorney |
| | District of Delaware |
| | |
| | Attorneys for Defendant |

The Honorable Sue L. Robinson