**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

LUCILLE GREENE,                             )
                                            )
                    Plaintiff,              )
                                            )
            *v.*                            )         C. A. No.  04-1297 (SLR)
                                            )
UNITED STATES POSTAL SERVICE,               )
                                            )
                    Defendant.              )


**PLAINTIFF'S CLOSING MEMORANDUM**


GRADY & HAMPTON, LLC
John S. Grady, Esq. (009)
6 North Bradford Street
Dover DE  19904
jgrady@gradyhampton.com
(302) 678-1265
Attorney for plaintiff

DATED:        January 10, 2006

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

STATEMENT OF FACTS ........................................................................................... 1

ARGUMENT .............................................................................................................. 4

    I.    THE DEFENDANT HAS A DUTY TO ACT IN A REASONABLE MANNER

        TOWARD THE PLAINTIFF. .................................................................... 4

    II.   MR. MAURER WAS NEGLIGENT .................................................................. 5

DAMAGES ............................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

Cases

<u>Carey v. Fuel Cents Oil Company</u>, 1996 WL 769771 (Del. Super.) .................................. 8

<u>Cummings v. Pinder</u>, 574 A.2d 843 (Del. 1990) .............................................................. 11

<u>Drayer v. O'Donnell</u>, 1995 WL 338700 (Del. Super.) ...................................................... 8

<u>Hostetter v. Hartford Insurance Company</u>, 1992 WL 179423 (Del. Super.) ...................... 8

<u>Lupo v. Medical Center of Delaware</u>, 1998 WL 110099 (Del. Super.)............................. 9

<u>Lupo v. Medical Center of Delaware, Inc.</u>, Del. Super. C.A. 94C-09-049, Terry, J. (Feb. 7, 1996) ...................................................................................................................... 9

<u>Pritchett v. Delmarva Builders</u>, 1998 WL 283376 (Del. Super.).................................. 9, 10

<u>Rea v. Midway Realty Corporation</u>, 1989 WL 100452 (Del. Super.) ............................ 7, 8

<u>Robb v. Pennsylvania Railroad Company</u>, Del. Supr. 210 A.2d 709 (1965) ....... 7, 8, 9, 10

<u>Tekstrom v. Savla</u>, 2005 WL 3073671 (Del. Com. Pl.).................................................... 11

<u>Wisnewski v. Jackman</u>.................................................................................................. 10

STATEMENT OF FACTS

On December 17, 2002, Lucille Greene, an 84-year-old woman, went to the post office to mail two fruitcakes, which were contained in a box.  On that particular day, she was, in all probability, first on line.  She was waited on by Mr. Maurer.

Mr. Maurer has a duty to inspect the package and ask if the package contained anything that was fragile, perishable, liquid, or potentially hazardous.  (T-91)

The Magnolia Post Office is a small post office.  It was Christmas time and the post office was busy.

Mr. Maurer took the package from the Plaintiff and not only inspected the package, but repeatedly asked in a rude manner if there were explosives in the package.  Mrs. Greene responded that the package contained fruit cakes.  According to postal regulations, once an individual responds as to what a package contains, the postmaster is only to ensure that there are no inappropriate markings on the box and then to accept the customer's money and mail the box.  (T-98)  The associate is to act in a professional manner.  In this particular case, Mr. Maurer persisted in an unreasonable manner to interrogate and re-interrogate Mrs. Greene as to the contents of the box, when it should have been obvious to any reasonable person that she was simply there to mail some fruit cakes.  (T-38)  Mr. Maurer embarrassed Mrs. Greene and should have realized that he was upsetting with his continued questioning.  (Ex. 3 – statement typed by granddaughter)  His remarks to her that she should look at the poster on the wall for an explanation that the box should not be marked up was also done in an insensitive manner, causing attention to her and embarrassment and causing individuals standing in line to

laugh at her.  (T-40)  By the time the incident was over, Mrs. Greene was in tears.  She said she had "never-never got talked to like that."  (T-41)

Mrs. Greene was still in tears when she left the post office to return to her car. After exiting the post office and returning to her car, she tripped over the parking bumper, causing lacerations and injury to her knee.  She broke her glasses and her tooth and her ring.

Because Mrs. Greene had an appointment to take her disabled son to the Veterans' Administration, she proceeded from Magnolia Post Office to the Veterans' Administration in Wilmington.  (T-42)

Upon her return, Mrs. Greene contacted the Magnolia Post Office and found that it was closed.  She then contacted the Dover Post Office to file a complaint about her treatment.  (T-43)

She relayed to her daughter and granddaughter the incidents that had occurred that night.  The granddaughter typed a statement and her daughter presented the statement to her, which was signed and then sent over to Magnolia Post Office.  It became part of the complaint.  (Ex. 3)

There was no formal resolution of the complaint.  Although Mrs. Ward testified that she found nothing inappropriate in the conduct, Mr. Maurer testified that he had never been notified of a resolution of the complaint and as far as he is concerned it was still ongoing.  (T-138)

Prior to this time, Mrs. Greene was an extremely active individual.  She took care of her own lawn care and she cleaned her own house.  She took care of her husband, who

was seriously ill, and her disabled adult child.  She was an unusually vigorous woman considering her age.

After the events on December 17, 2002, Mrs. Green saw her family physician and was then treated by Dr. Schwartz, who ultimately performed surgery on her left knee which has not relieved her symptoms.  (Ex. 5)  Dr. Schwartz submitted a report, which has been accepted into evidence, indicating that she suffered a permanent injury to her left knee.  (Ex. 9)  Mrs. Greene has testified that she no longer can clean her house and take care of her lawn and perform in the vigorous manner which she had in the past.  She further testified that she now has to pay someone $50.00 a week to cut her grass and that she has someone come in once a month to clean her house, which costs her $100.00 per month.  (T-52 – 54)

## ARGUMENT

I.     THE DEFENDANT HAS A DUTY TO ACT IN A REASONABLE MANNER TOWARD THE PLAINTIFF.

In this case, Plaintiff has argued that Defendant Maurer's conduct constituted intentional infliction of emotional distress and negligent infliction of emotional distress. The Court has dismissed the intentional infliction of emotional distress theory.

Cases involving negligent infliction of emotional distress generally hold that in order for those actions to be actionable, plaintiff must demonstrate not only that the conduct of a defendant was negligent and caused emotional distress, but also that the emotional distress caused some physical injury.

II.    MR. MAURER WAS NEGLIGENT

The initial determination of the Court is to determine what actually happened at the meeting on December 17, 2002.  Several conclusions can easily be made.  The first is that something very unusual happened to Plaintiff in her attempt to mail the fruit cakes.  She had in the past probably mailed more fruit cakes than any individual in the State of Delaware without incident.  Despite his comments, Mr. Maurer appears to have a bit of a reputation for, at a minimum, not being very considerate to individuals.  On this particular day, it is reasonable to conclude that the steps he took to investigate the mailings of the fruit cakes were exaggerated, such that they left the Plaintiff in tears.

The video introduced into evidence by the Government demonstrates not only the questions that a post office employee is supposed to ask when someone is mailing a package, but also the manner.  It is the manner in which Mr. Maurer asked the questions that was deficient and below the standard of the post office.  Plaintiff would suggest that the standard of care required by the post office was created by the video.  As an example the individuals in the video demonstrated that once an individual states what is contained in a package then that should be accepted as true.  There was absolutely no reason in this case for Mr. Maurer to continue to question whether or not there were explosives in the box.  While it is true that this incident took place subsequent to September 11, 2001, there is no rational reason why Mr. Maurer would suspect that Mrs. Greene had explosives in her box.  The video demonstrates the shake test that was supposed to take place.  The shaking Mr. Maurer was performing, according to Mrs. Greene, was certainly far more vigorous than that demonstrated in the video.

There are a number of credibility issues in this case.  It is submitted that Plaintiff's basic story is credible and it should be believed.  Her testimony was consistent with the oral complaint that she made to her daughter immediately after the accident and it is consistent with the written statement which her granddaughter typed.

Although it is inconsistent with the conclusion of Mrs. Ward, Mrs. Ward's testimony and her investigation are suspect.  Mrs. Ward demonstrated at trial a complete unwillingness to even acknowledge that the conduct, as alleged by Mrs. Greene, was unacceptable.  She repeatedly refused to answer questions concerning the content of the complaint and finally concluded that notwithstanding the allegations they did not warrant unacceptable conduct.

Mrs. Ward took no steps to get back to either Mrs. Greene or Mrs. Pune in any kind of investigation.  In fact, the investigation that she repeatedly spoke of appears to have been no investigation at all.  The statements supplied to Mrs. Ward were simply forwarded on to management.  There is no written record of any resolution of what happened.  Mr. Maurer was not disciplined.  The only explanation supplied by Mrs. Ward for accepting the testimony of Mr. Maurer was that he was a professional and that she simply accepted his testimony.  She did admit that there had been previous complaints about Mr. Maurer and that he had not demonstrated a very friendly attitude on a number of occasions.  She supplies no explanation for rejecting the complaints of Mrs. Greene. Ex. 3.

Mr. Maurer in his written statement was of course self-serving.  He acknowledged that Mrs. Greene was upset. He states in his written statement that it was either from waiting in line or from his conduct.  The reasonable conclusion from the facts presented

at trial was that Mrs. Green was first in line.  If she was first in line, then the only explanation would be that she was upset from his conduct.

The case presents the nuances in inflection and tone with which we are all familiar.  An individual can ask a normal question in a sarcastic tone with the end result being sarcastic.  I would ask the Court, in reviewing the facts, to take the necessary mental steps of attempting to go back in time to the events on December 17, 2002, and to try to make sense of what happened.  The only reasonable explanation is that being offered by Plaintiff and that is that the conduct of Mr. Maurer and the manner and tone of voice was such that he breached his duty to act in a reasonable manner to his customers.

Plaintiff claims in this case that the conduct of Mr. Maurer was negligent in that it caused her emotional distress which in turn caused her to fall and be injured.

The Delaware cases analyzing the concept of injury for emotional distress, also referred to as negligent infliction of emotional distress, begin with Robb v. Pennsylvania Railroad Company, Del. Supr. 210 A.2d 709 (1965).  In that case, the Court made reference to the zone of danger test, which requires that the "negligence proximately caused fright in one within the immediate area of physical danger and that negligence which, in turn, produced physical consequences such as would the elements of damages as if bodily injury had been suffered."

In this case, Plaintiff is clearly within the zone of danger.  In fact, it was the Plaintiff who suffered the immediate consequences of the conduct of Mr. Maurer.

In Rea v. Midway Realty Corporation, 1989 WL 100452 (Del. Super.), the court stated that to support a claim of negligent infliction of emotional distress or mental anguish there must be evidence of a present physical injury, citing Robb v. Pennsylvania

7

Railroad.  In Rea, the plaintiff did not have any present physical injury and therefore the claim was dismissed.  In the instant case, it is Plaintiff's position that the series of events of Plaintiff's encounter with Mr. Maurer and then leaving the post office constitute a single event and that the physical injury requirement has been met when Plaintiff slipped and fell on the parking bumper.

In Hostetter v. Hartford Insurance Company, 1992 WL 179423 (Del. Super.), the plaintiff brought an action against the insurance carrier, arguing negligent infliction of emotional distress.  In that case, the court denied the claim on the grounds that there was no negligence and because plaintiff had not alleged a physical component sufficient to permit recovery for negligent infliction of emotional distress.

In Drayer v. O'Donnell, 1995 WL 338700 (Del. Super.), the plaintiff brought an action against her former employers and a title company for allegedly circulating a story in connection with her vacation which she alleged constituted sexual harassment.  The court there addressed a claim of the sexual harassment and also a claim of negligent infliction of emotional distress.  The court there also indicated that as a part of the negligence claim there must be physical injury resulting from emotional distress.  In that case, the court found that sleeplessness and nausea did constitute the physical injury.  It is noteworthy that the physical injury did not have to occur immediately at the time of the alleged negligent infliction of emotional distress.  The sleeplessness and nausea are obviously events that occurred after that time.

In the case of Carey v. Fuel Cents Oil Company, 1996 WL 769771 (Del. Super.), the court notes the developing law of negligent infliction of emotional distress.  The court states:

8

A growing number of Delaware cases recognize that such symptoms as weight loss, headaches, and depression may be legitimate grounds to assert such a claim. See Lupo v. Medical Center of Delaware, Inc., Del. Super. C.A. 94C-09-049, Terry, J. (Feb. 7, 1996).

In that case, Ms. Carey alleged that she had suffered headaches, weight loss and nose bleeds as a result of the defendant's negligence. The court found that such allegations were sufficient. In the instant case, Plaintiff alleges that the emotional trauma that she experienced was so severe and that she was so upset that in leaving the post office she did not observe the parking bumper and as a result she was severely injured.

A theme running through all of the negligent infliction of emotional distress cases is that the courts should not permit recovery for emotional distress unless it was significant. The test used by the courts generally is some sort of physical injury. The courts have modified that to include emotional injury.

This is not a zone of danger case as referred to in Robb, where an individual has attempted to recover when he was not present when the emotional trauma occurred. The Plaintiff was in the post office and subject to the conduct of Mr. Maurer.

In Pritchett v. Delmarva Builders, 1998 WL 283376 (Del. Super.), the plaintiff brought an action alleging that upon her return she observed her house being burned down and she claimed that she suffered a negligent infliction of emotional distress. The court there, referring to Robb, said that the plaintiff could only recover if the plaintiff was within "the immediate area of physical danger from that negligence" and if the emotional distress caused fright "which in turn produced physical consequences." The court distinguished cases like Lupo v. Medical Center of Delaware, 1998 WL 110099 (Del. Super.) where the zone of danger rule was not applied because that case involved the allegation of direct injury to the plaintiffs by the alleged misrepresentations made to

the plaintiffs by the hospital.  That case did not involve emotional distress caused by witnessing damage to property.  Pritchett is not helpful to the Defendants in this case.  In fact, it explains why the zone of danger is not a real issue in this case.

In Wisnewski v. Jackman, the court addresses the ongoing issues in an negligent infliction of emotional distress case.  The court says:

> To recover under a claim of negligent infliction of emotional distress, the plaintiff must provide evidence of physical injury.  This issue becomes complicated where the plaintiff does not immediately suffer a physical injury from the negligence; rather, the plaintiff is frightened and this leads to physical injury at a later point and time.  In Robb v. Pennsylvania Railroad Company, the Delaware Supreme Court enunciated a rule to apply where plaintiff is frightened first:  where negligence proximately caused fright, in one within the immediate area of physical danger from that negligence, which in turn produced physical consequence such as were the elements of damage if a bodily injury had been suffered, the injured party is entitled to recover under application of the prevailing principles of law as to negligence and proximate causation.

The Robb rule is similar to the Restatement (Second) of Torts §436A, which states the following:

> If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional distress….  On the other hand, long continued nausea or headaches may amount to a physical illness, which is bodily harm; and even long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration, it may be classified by the courts as illness, notwithstanding their mental character.  Where the physical phenomena accompanying emotional disturbances are transitory and non-recurring, they do not amount to the physical injury needed for recovery under a negligent infliction of emotional distress claim.

The facts in this case are different from Robb and different from many of the negligent infliction of emotional distress or negligence claims.  In fact, the facts can probably best be analyzed under the normal concepts of proximate cause.  It is Plaintiff's

position that the injuries that she has suffered came out of a single incident, which was her engagement with Defendant at the post office. The physical harm that she suffered came as a proximate cause of the emotional upset caused by the negligence of the Defendant, causing her to fall. It is Plaintiff's contention that but for her emotional upset, she would not have tripped over the parking bumper.

The Court may also look to <u>Cummings v. Pinder</u>, 574 A.2d 843 (Del. 1990), which is helpful in analyzing the extent of claims of infliction of emotional distress. <u>Cummings</u> is a claim for <u>intentional</u> infliction of emotional distress; however, the damage claims can be analogous to a claim of negligent infliction of emotional distress. In <u>Cummings</u>, the court permitted recovery for the damages caused by the defendants improperly stopping her check. The court said that in light of his conduct it was foreseeable that his conduct would cause her checks to bounce. In <u>Tekstrom v. Savla</u>, 2005 WL 3073671 (Del. Com. Pl.), the court awarded damages for pain and suffering, lost wages, and intentional infliction of emotional distress. The court at page 10 found that Savla was entitled to a recover for intentional infliction of emotional distress for damages proximately caused by the Defendant's conduct that were reasonably foreseeable by Tekstrom and Minhas, which included lost wages and general compensation damages. Both of these cases support Plaintiff's claim that she is entitled to damages proximately caused by the conduct of the Defendant.

DAMAGES

Plaintiff is seeking the following damages:

1.    Damages for the costs of personal services, which she previously could perform by herself.  She has alleged that for a period of 3 years from approximately May through October had to pay on average $50.00 a week for someone to cut her lawn.  That would mean a total of $4,400.00.  She would also request $100.00 per month for having to obtain services for housework, which would be $3,600.00.

2.    She also requests compensation for repairing her ring, her glasses, dental expenses and medical bills, which have been produced, totaling $2,438.47.  ( Ex. 8)

3.    Finally, she would ask for general compensatory damages for the injuries that she has suffered past and future.  Prior to this time, Mrs. Greene was an unusually active 84-year-old lady.  She has suffered a permanent injury to her leg, which has caused her significant pain.  She testified that she has attempted to tough it out as much as possible.  During the time period when she was taking care of her husband, she had to continue to take care of him while he was at home, despite her injuries.  Her activities have been extremely restricted.  Plaintiff would suggest that even though she does not have an extremely long life expectancy, on the other hand these injuries have seriously impacted and will continue to seriously impact the remaining years of her life.  This award should be substantial.

Most of the cases dealing with the physical injuries sustained by negligent or intentional infliction of emotional distress usually address injuries caused by the emotion or distress itself because Plaintiff was so upset that she failed to pay proper attention and

actually tripped over a parking bumper.  This act would not have happened but for the fact that she was so upset by the conduct of the Defendant.

GRADY & HAMPTON, LLC


/S/ John S. Grady_____
John S. Grady, Esquire (009)
6 North Bradford Street
Dover DE  19904
(302) 678-1265
Attorney for plaintiffs

DATED:        January 10, 2006