UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LUCILLE GREENE, | ) | |
| | ) | C.A. No. 04-1297 (SLR) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S POST-TRIAL ANSWERING BRIEF**

<div style="text-align:right">

COLM F. CONNOLLY
United States Attorney, District of Delaware

By:    Patricia C. Hannigan (De. I.D. No. 2145)
Seth M. Beausang (De. I.D. No. 4071)
Assistant United States Attorneys
The Nemours Building
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277

</div>

Dated:  February 24, 2006.

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.     Plaintiff Stopped At The Magnolia, Delaware Post Office To
           Mail A Package. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.     Postal Regulations Required Mr. Maurer To Inspect Plaintiff's Package
           Before He Accepted It For Mailing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.     Mr. Maurer Inspected Plaintiff's Package And Ultimately
           Accepted It For Mailing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      D.     Plaintiff Became Upset Because Her Package Was Not Immediately
           Accepted For Mailing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      E.     Plaintiff Was Not Frightened Or In Any Danger During The Incident. . . . . . . 6

      F.     Plaintiff Left The Post Office And Tripped And Fell, Hurting Herself. . . . . . . 6

      G.     Plaintiff's Alleged Emotional Distress Did Not Manifest As A
           Physical Injury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      I.     LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           A.     The Zone-Of-Danger Test. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           B.     Possible Exception To The Zone-Of-Danger Test – Damages
                 For Emotional Distress Might Be Available When An Independent
                 Tort Is Established. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      II.    PLAINTIFF'S NIED CLAIM FAILS BECAUSE PLAINTIFF
           WAS NEVER IN THE ZONE OF DANGER OF PHYSICAL HARM. . . . . . . . 11

           A.     Plaintiff's NIED Claim Fails Because She Admits That She
                 Was Not Frightened By Mr. Maurer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

           B.     Even If Mr. Maurer Shook Plaintiff's Package Too Forcefully,
                 That Cannot Be The Basis Of A NIED Claim. . . . . . . . . . . . . . . . . . . . . . 12

      III.   PLAINTIFF'S NIED CLAIM ALSO FAILS BECAUSE PLAINTIFF
           DID NOT SUFFER EMOTIONAL DISTRESS SO SEVERE THAT IT
           PRODUCED PHYSICAL MANIFESTATIONS. . . . . . . . . . . . . . . . . . . . . . . 15

IV.     PLAINTIFF'S NIED CLAIM ALSO FAILS BECAUSE MR. MAURER DID NOT BREACH ANY DUTY OF CARE THAT HE OWED TO PLAINTIFF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        A.    Mr. Maurer Complied With His Duty Of Care Because He Did Not Engage In Outrageous Conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        B.    The USPS's Training Video Did Not Create A Standard Of Care. . . . . . 21

V.     PLAINTIFF'S NIED CLAIM FAILS BECAUSE, EVEN IF MR. MAURER BREACHED A DUTY OF CARE OWED TO PLAINTIFF, PLAINTIFF'S OWN NEGLIGENCE AND OTHER UNFORESEEABLE CIRCUMSTANCES WERE THE SUPERVENING CAUSES OF HER PHYSICAL INJURIES. . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **PAGE**

*Avallone v. Wilmington Med. Ctr., Inc.*,
  553 F. Supp. 931 (D. Del. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Chinski v. New Castle County Vocational & Tech. Sch. Dist.*,
  No. 92C-05-009SCD, 1995 WL 790997 (Del. Super. Ct. Dec. 5, 1995) . . . . . . . . . . . 22

*Consol. Rail Corp. v. Gottshall*,
  512 U.S. 532 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Czaplicki v. Gooding Joint Sch. Dist. No. 231*,
  775 P.2d 640 (Idaho 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Drainer v. O'Donnell*,
  No. 94C-08-062, 1995 WL 338700 (Del. Super. Ct. July 28, 1995) . . . . . . . . . . . . . 10, 18

*Garvis v. Employers Mut. Cas. Co.*,
  497 N.W.2d 254 (Minn. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hostetter v. Hartford Inc. Co.*,
  No. 85C-06-28, 1992 WL 179423 (Del. Super. Ct. July 13, 1992) . . . . . . . . . . . . . . . . 16

*Lloyd v. Jefferson*,
  53 F. Supp. 2d 643 (D. Del. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15, 17-18

*Lupo v. Med. Ctr. of De., Inc.*,
  No. 94C-09-049, 1996 WL 111132 (Del. Super. Ct. Feb. 7, 1996) . . . . . . 9-10, 15, 17-18

*Pritchett v. Delmarva Builders, Inc.*,
  No. 97C-03-011, 1998 WL 283376 (Del. Super. Ct. Feb. 27, 1998) . . . . . . . . . . 11, 14-15

*Rea v. Midway Realty Corp.*,
  No. 88C-JL6, 1989 WL 100452 (Del. Super. Ct. Aug. 23, 1989) . . . . . . . . . . . . . . . . . 11

*Robb v. Pennsylvania R. Co.*,
  210 A.2d 709 (Del. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9, 11, 16

*Rustvold v. Taylor*,
  14 P.3d 675 (Or. Ct. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Wal-Mart Stores, Inc. v. Medina*,
    814 S.W.2d 71 (Tex. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Wisnewski v. Jackman*,
    No. 03C-07-015, 2005 WL 406338 (Del. Super. Ct. Jan. 28, 2005) . . . . . . . . . . . . . . . 17

**OTHER AUTHORITIES**

28 U.S.C. § 2674. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

David Crump, *Evaluating Independent Torts Based Upon "Intentional" Or "Negligent"*
    *Infliction Of Emotional Distress:  How Can We Keep The Baby From Dissolving*
    *In The Bath Water?*, 34 ARIZ. L. REV. 439 (Fall 1992) . . . . . . . . . . . . . . . . . . . . . . . . 8-9

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff sued the United States Postal Service ("USPS") asserting two claims under the Federal Tort Claims Act ("FTCA"), namely, intentional infliction of emotional distress and negligent infliction of emotional distress ("NIED"). Plaintiff claims she suffered emotional distress caused by USPS employee James Maurer on December 17, 2002, when Plaintiff went to the Magnolia, Delaware post office to mail a package containing fruitcakes. A one-day bench trial was held on November 7, 2005. At the conclusion of the trial, the Court ruled that Plaintiff had failed to make out a claim for intentional infliction of emotional distress "because, even taking everything [Plaintiff] says as true, the alleged conduct does not constitute extreme and outrageous conduct beyond all possible bounds of decency, atrocious and intolerable to a civilized community." (Tr. at 143-44.) The Court requested that the parties brief the NIED claim. Plaintiff filed her opening brief on January 10, 2006. This is Defendant's answering brief.

1

## SUMMARY OF THE ARGUMENT

1.      To recover for NIED under Delaware law, Plaintiff must prove that, as a result of Mr. Maurer's negligent act, (1) Plaintiff was "within the immediate area of physical danger" and (2) that her resulting emotional distress "produced physical consequences such as would be elements of damage if a bodily injury had been suffered. . . ."

2.      Plaintiff failed to make out a claim for NIED because she admits that she was never in any danger during her encounter with Mr. Maurer.  Moreover, Plaintiff admits that she was not frightened during that encounter.  Accordingly, Plaintiff was not in the immediate area of physical danger during that encounter.

3.      Plaintiff also failed to make out a claim for NIED because she did not present any evidence that she suffered emotional distress so severe that it manifested as a physical injury. The injuries that Plaintiff suffered were caused by her fall; they did not arise from her alleged emotional distress.

4.      Plaintiff also failed to make out a claim for NIED because the conduct on which she bases her NIED claim is the same allegedly "very rude" conduct that the Court ruled was not tortious because it was not sufficiently outrageous so as to constitute intentional infliction of emotional distress.  Plaintiff cannot make out a claim for NIED by alleging that Mr. Maurer was "rude" and, therefore, "negligent."  In Delaware, rude conduct is only tortious when it rises to the level of outrageousness sufficient to make out a claim for intentional infliction of emotional distress.  The Court has already ruled that Mr. Maurer's conduct did not rise to that level.

5.      Finally, even if Mr. Maurer breached his duty of care to Plaintiff during the incident – which he did not – Plaintiff's NIED claim would still fail because her negligence and

2

other unforeseeable circumstances were the supervening causes of her injuries. Mr. Maurer, a postal clerk working during a "crazy" holiday season (Tr. at 102), could not reasonably foresee that Plaintiff, one of his many customers, would become so upset by his performing the required inspection of her package that she would, after leaving the post office, carelessly walk with her head down while wiping away tears and trip over a cement parking stopper that was difficult to see because of the sun and because it was obscured by a parked car.

### STATEMENT OF FACTS

**A.    Plaintiff Stopped At The Magnolia, Delaware Post Office To Mail A Package.**

On December 17, 2002, Plaintiff was with her husband and son and on her way to Wilmington, Delaware for a doctor's appointment when she stopped at the Magnolia, Delaware post office to mail a package. (Tr. at 37.) Plaintiff's husband, who was driving, and her son waited in the car while Plaintiff went into the post office. (*Id.*) Mr. Maurer was the postal clerk who waited on Plaintiff. (*Id.*)

**B.    Postal Regulations Required Mr. Maurer To Inspect Plaintiff's Package Before He Accepted It For Mailing.**

Mr. Maurer is required by postal regulations to ask every customer that presents a package for mailing – irrespective of any markings on the package – if the package contains any "liquid, fragile, perishable or potential[ly] hazardous material." (*Id.* at 125-26; *see also id.* at 97-98.) Examples of hazardous materials include materials capable of burning or exploding, such as hair spray or perfume; materials with corrosive properties, such as battery fluids, dyes or bleach; poisonous or irritating materials, such as pesticides or pepper spray; biological hazards, such as blood or other body fluid samples mailed for diagnostic testing; and other hazardous materials, such as dry ice and magnetized materials. (*Id.* at 85-86.) Mr. Maurer must also visually inspect each package for markings and shake each package and listen for the sounds of broken glass, shifting weight or the sound of a moving liquid. (*Id.* at 88.)

Special regulations apply when Mr. Maurer finds that a customer has presented him with a package bearing an ORM-D marking, like the package Plaintiff presented. (*Id.* at 128; *see also id.* at 38 (Plaintiff testifying that "I didn't know those numbers were on there.")) ORM-D

4

stands for "other regulated material." (*Id.* at 126.) When Mr. Maurer is presented with a package bearing the marking ORM-D he must assume that the package contains hazardous materials. (*Id.* at 86.) Postal regulations recommend that Mr. Maurer again ask the customer if the package contains anything hazardous. (*Id.* at 94.) Mr. Maurer is not supposed to accept a package bearing the marking ORM-D for mailing; instead, he is supposed to return the package to the customer. (*Id.* at 126.) If the customer states that the package does not contain hazardous materials, the customer – not Mr. Maurer – must completely cross out the ORM-D marking before the package can be accepted for mailing. (*Id.* at 127; *see also id.* at 92.)

**C.    Mr. Maurer Inspected Plaintiff's Package And Ultimately Accepted It For Mailing.**

Mr. Maurer took Plaintiff's package, asked Plaintiff if her package contained anything fragile, liquid, perishable or potentially hazardous (*id.* at 133),[1] and performed the required shake test and visual inspection (*id.* at 128). After finding the ORM-D marking on the package, Mr. Maurer directed Plaintiff's attention to a poster on the wall that explained that reused boxes bearing ORM-D markings are not mailable. (*Id.* at 128.) Plaintiff testified that she refused to look at the poster. (*Id.* at 64.) According to Mr. Maurer, Plaintiff stated that she was blind. (*Id.* at 128.) Mr. Maurer then crossed out the ORM-D marking for Plaintiff – which was technically a violation of postal procedures – and accepted her package for mailing. (*Id.* at 128.)

---

[1] Plaintiff's recollection that Mr. Maurer asked if her package contained "explosives" is not credible in light of her difficulty remembering other details about this incident and Mr. Maurer's testimony that he always asks customers presenting packages – including Plaintiff – the same question, namely, "whether there's any liquid, fragile, perishable or potential[ly] hazardous material in there." (Tr. at 125-26, 135-36.) It is far more likely that Plaintiff remembers the word "explosives" because that is what she assumed Mr. Maurer was referring to when he spoke of "potential[ly] hazardous material."

**D.    Plaintiff Became Upset Because Her Package Was Not Immediately Accepted For Mailing.**

Plaintiff testified that she did not know that the ORM-D marking was on the package that she presented to Mr. Maurer for mailing. (*Id.* at 38, 63.) Plaintiff also did not know what the ORM-D marking meant or "[w]hat difference [it meant] - - boxes with different initials on them." (*Id.* at 65.) According to Plaintiff, she had never before had a problem mailing fruitcakes from the Magnolia post office. (*Id.* at 36.) Accordingly, Plaintiff did not know why Mr. Maurer repeatedly asked her if the package contained anything hazardous. (*Id.* at 39.) She also did not think that Mr. Maurer should have shaken her package. (*Id.*) After Mr. Maurer accepted her package for mailing, Plaintiff was "shook up a little bit" and crying. (*Id.* at 39-40.)

**E.    Plaintiff Was Not Frightened Or In Any Danger During The Incident.**

Importantly, however, Plaintiff was not frightened during her encounter with Mr. Maurer. (*Id.* at 66.) She admitted that Mr. Maurer did not threaten her, swear at her, touch her, try to touch her, or throw anything at her. (*Id.* at 65-66.) In fact, she admitted that Mr. Maurer could not have touched Plaintiff because the counter space separating them was too large. (*Id.*)

**F.    Plaintiff Left The Post Office And Tripped And Fell, Hurting Herself.**

Plaintiff then left the post office and walked to her car, going down a few steps. (*Id.* at 40-41.) She testified that as she was walking she had her head down and she was wiping away tears. (*Id.* at 69.) She stated that the sun was probably shining. (*Id.*) Plaintiff testified that her car partially obscured a cement parking stopper – only about seven or eight inches of the cement stopper were sticking out from under the car. (*Id.* at 41, 67-68.) According to Plaintiff, she caught her right toe on the end of that stopper and tripped and fell, suffering injuries. (*Id.* at 41-

6

42.)

**G.     Plaintiff's Alleged Emotional Distress Did Not Manifest As A Physical Injury.**

Plaintiff did not present any evidence that her alleged emotional distress manifested as a physical injury.  For example, Plaintiff did not testify that she was so upset by her encounter with Mr. Maurer that she became depressed or had trouble sleeping.  Rather, all the injuries that Plaintiff described were caused by her fall.

## ARGUMENT

### I.    LEGAL STANDARDS.

#### A.    The Zone-Of-Danger Test.

Liability under the FTCA is controlled by state law, here Delaware law.  *See* 28 U.S.C.

§ 2674.  To recover for NIED under Delaware law, Plaintiff must prove that, as a result of Mr.

Maurer's negligent act, (1) Plaintiff was "within the immediate area of physical danger" and (2)

that her resulting emotional distress "produced physical consequences such as would be elements

of damage if a bodily injury had been suffered. . . ."  *Robb v. Pennsylvania R. Co.*, 210 A.2d 709,

714-15 (Del. 1965).

Plaintiff argues that this case is "different from many" of the NIED cases and can

"probably best be analyzed under the normal concepts of proximate cause."  (Pl.'s Br. at 10.)

Plaintiff is wrong.  Courts "have realized that recognition of a cause of action for negligent

infliction of emotional distress holds out the very real possibility of nearly infinite and

unpredictable liability for defendants."  *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 546

(1994) (collecting cases); *see also* David Crump, *Evaluating Independent Torts Based Upon*

*"Intentional" Or "Negligent" Infliction Of Emotional Distress:  How Can We Keep The Baby*

*From Dissolving In The Bath Water?*, 34 ARIZ. L. REV. 439, 462-63 (Fall 1992) (explaining

that if foreseeability were the only limit on NIED claims, then every person who watched the

Challenger space shuttle disaster on television arguably would have had a claim against the

United States for NIED).  Accordingly, "[t]hree major limiting tests for evaluating claims

alleging negligent infliction of emotional distress have developed in the common law."

*Gottshall*, 512 U.S. at 546.  Delaware has adopted the second of these tests, namely, the "zone of

8

danger" test. *Id.* at 546 n.9 (citing *Robb*).

The zone-of-danger test that Delaware adopted limits NIED claims by requiring the plaintiff to prove that he or she was "within the immediate area of physical danger" and that, as a result, he or she suffered emotional distress so severe that it manifested as a physical injury. *See Robb*, 210 A.2d at 714-15. In other words, *simply alleging that the defendant violated a duty of reasonable care and proximately caused the plaintiff to suffer emotional distress does not suffice to state a NIED claim in Delaware* (or in any other state). Here, however, Plaintiff admitted at trial that she was never in any physical danger during her encounter with Mr. Maurer. In fact, Mr. Maurer's actions created no physical danger to Plaintiff or anyone else. Moreover, Plaintiff did not present any evidence at trial that her alleged emotional distress was so severe that it manifested as a physical injury. Accordingly, Plaintiff failed both prongs of the zone-of-danger test, and, as a result, her NIED claim must fail.[2]

## B. Possible Exception To The Zone-Of-Danger Test – Damages For Emotional Distress Might Be Available When An Independent Tort Is Established.

A few lower Delaware courts have recognized what might be called an exception to the zone-of-danger test. These courts have allowed plaintiffs to seek compensation for alleged emotional distress – without applying the zone-of-danger test – when the emotional distress was caused by some tort independent of the NIED claim. *See, e.g.*, *Lupo v. Med. Ctr. of De., Inc.*,

---

[2]Plaintiff's argument that this case can "probably best be analyzed under the normal concepts of proximate cause" (Pl.'s Br. at 10) is wrong because it invites the Challenger space shuttle problem discussed by Professor Crump. If proximate cause – i.e., foreseeability – were the only limit on NIED claims in Delaware (as Plaintiff suggests) then all Delaware residents who watched the Challenger disaster on television should have been able to sue the United States for NIED. Clearly negligence caused that disaster, and, equally clearly, it was foreseeable that Delaware residents watching the disaster on television might suffer emotional distress as a result. The zone-of-danger test is designed to prevent such absurd NIED claims.

No. 94C-09-049, 1996 WL 111132, at *3 (Del. Super. Ct. Feb. 7, 1996) (denying defendants' motion for summary judgment because plaintiffs were seeking compensation for emotional damages caused by *medical malpractice*); *Drainer v. O'Donnell*, No. 94C-08-062, 1995 WL 338700, at *3 (Del. Super. Ct. July 28, 1995) (denying defendants' motion to dismiss because plaintiff was seeking compensation for emotional damages caused by *sexual harassment*); *see also Lloyd v. Jeffereson*, 53 F. Supp. 2d 643, 675-76 (D. Del. 1999) (holding that the zone-of-danger test did not apply to plaintiff's claims because she sought compensation for emotional damages caused by *assualt and battery* and *false imprisonment*).

In other words – assuming the Delaware Supreme Court would recognize this "exception" – the zone-of-danger test will not apply when a plaintiff brings a tort claim *other than NIED* and seeks compensation for emotional distress caused by that independent tort. The zone-of-danger test steps in to provide a rational limit on NIED claims, however, when – as in this case – all the plaintiff alleges is that the defendant was negligent and proximately caused the plaintiff to suffer emotional distress. Even when the zone-of-danger test does not apply, however, the plaintiff must still show that his or her emotional distress was so severe that it manifested as a physical injury. *See, e.g.*, *Lupo*, 1996 WL 111132, at *3 ("Thus, where the physical phenomena accompanying emotional disturbance are transitory and non-recurring they do not amount to the physical injury needed for recovery under a negligent infliction of emotional distress claim.").

10

## II.    PLAINTIFF'S NIED CLAIM FAILS BECAUSE PLAINTIFF WAS NEVER IN THE ZONE OF DANGER OF PHYSICAL HARM.

### A.    Plaintiff's NIED Claim Fails Because She Admits That She Was Not Frightened By Mr. Maurer.

As explained above, to recover for NIED under Delaware law, Plaintiff must prove that, as a result of Mr. Maurer's negligent act, Plaintiff was "within the immediate area of physical danger." *Robb*, 210 A.2d at 714-15.  Because Plaintiff was never in any physical danger during her encounter with Mr. Maurer, her NIED claim must fail.  *See, e.g.*, *Pritchett v. Delmarva Builders, Inc.*, No. 97C-03-011, 1998 WL 283376, at *4 (Del. Super. Ct. Feb. 27, 1998) (dismissing claim for NIED because the plaintiffs did not allege that the defendant's conduct placed them in the zone of danger where there existed a risk of physical injury to the plaintiffs); *Rea v. Midway Realty Corp.*, No. 88C-JL6, 1989 WL 100452, at *4 (Del. Super. Ct. Aug. 23, 1989) ("Thus, on the facts of this case, there is no basis for a negligent infliction of emotional distress claim since the case did not involve any act which would have caused plaintiffs to fear for their own safety.").

In her brief, Plaintiff asserts without any record support that she was "clearly within the zone of danger."[3]  (Pl.'s Br. at 7.)  Because that assertion is flatly contradicted by Plaintiff's testimony at trial, it must be rejected:

> Q:    During the incident, Mr. Maurer, he never swore at you, did he?
> A:    No, he didn't.
> Q:    He didn't throw anything at you?
> A:    Well, bad enough throwing the fruitcakes around.
> Q:    Okay.  But he didn't throw anything at you, did he?
> A:    No, no.

---

[3]Later in her brief, Plaintiff confusingly reverses course and argues that "[t]his is not a zone of danger case as referred to in *Robb* . . . ."  (Pl.'s Br. at 9.)

Q:    He didn't threaten you in any way, did he?
A:    No.
Q:    He didn't touch you?
A:    No.
Q:    Didn't try to touch you?
A:    *He couldn't because of the space there.*
Q:    You weren't frightened of him, were you?
A:    Pardon me?
Q:    You weren't frightened of him, were you?
A:    Frightened of him?
Q:    Yes.
A:    *Are you kidding?  No.*
Q:    In fact, you wanted to hit him at the time, didn't you?
A:    Well, you know, I've got a lot of French blood in me and he shook me up.  I was –
       I didn't know what he was talking about.

(Tr. at 65-66 (emphasis added).)

Plaintiff's testimony makes clear that she was not in the zone of danger of physical harm

during her encounter with Mr. Maurer.  Plaintiff admits that Mr. Maurer did not touch, threaten,

or try to harm her in any way.  Moreover, according to Plaintiff, Mr. Maurer *couldn't*

*have touched her* because the counter space separating them was too large.  And, according to

Plaintiff, she was not frightened by Mr. Maurer; in fact, she wanted to hit him.  Accordingly,

Plaintiff was not in the zone of danger, and, therefore, her NIED claim must be dismissed.

**B.    Even If Mr. Maurer Shook Plaintiff's Package Too Forcefully, That Cannot
        Be The Basis Of A NIED Claim.**

Plaintiff also suggests in her brief that Mr. Maurer was negligent when he allegedly shook

her package too forcefully.  (Pl.'s Br. at 5.)  To the extent Plaintiff is basing her NIED claim on

Mr. Maurer's alleged improper handling of her package, that argument should be rejected for two

reasons.  First, there is no credible evidence that Mr. Maurer shook Plaintiff's package too

forcefully.  Plaintiff testified that Mr. Maurer shook her package and rolled it over repeatedly.

However, she appeared to be most upset not with how hard Mr. Maurer was shaking her package, but rather that Mr. Maurer was shaking her package at all and asking about its contents:

> Q:    . . .
>         So you got up to the counter, I assume, and Mr. Maurer was there.  And what did you tell him?
>
> A:    He picked the package up.  He said, What is in here?  Explosives, explosives, explosives?  And he had them up, kept shaking them.  Explosives?  I said, No. Fruitcakes.
>         And he - - he looked at them, kept rolling them over, rolling them over. And he said, again, Explosives?
>         I said, Fruitcakes.
>         Then he - - he took the box, rolled it over.  Then he found some numbers. I didn't know those numbers were on there.  I didn't because my husband was the one that put the tape on them and all.
>         And he said, There's some things on here, have numbers, and he didn't say tell me what they were.  He took his crayon or something and he rubbed them off.
>
> Q:    Okay.
>
> A:    Then he put the box down.  He said, Give me $5 and 35 cents.  And I don't even know if he weighed them.  I was - - I was getting kind of shook.
>         At first, you know, I thought he was kidding with me, and I didn't know. Then he got serious.  And I was kind of shook up a little bit, and I gave - - handed him a $20 bill and he gave - - put that down.  He said, 35 cents.
>         So I took my change purse out.  I dropped it on the floor.  Some girls helped me pick it up.  And I was shook.
>
> Q:    All right.
>
> A:    I was hurt.  I was hurt.
>         *How do you think that I would go in there and have explosives in a box in a Post Office?  I just - - he should never have shook those boxes if he thought those were explosives in the first place.*

(Tr. at 38-39 (emphasis added).)

What Plaintiff apparently did not know at the time of this incident was that Mr. Maurer was *required* by postal regulations to shake her package and ask about its contents.  Plaintiff concedes this point in her brief.  (*See* Pl.'s Br. at 5 ("The video demonstrates the shake test that was supposed to take place.").)  The ORM-D marking on Plaintiff's package made it even more important that Mr. Maurer ensure that her package did not contain any hazardous materials –

accordingly, it was perfectly appropriate for Mr. Maurer to ask Plaintiff a second time about the

contents of her package.  (*See* Tr. at 94 (portion of training video where postal clerk is

commended for asking a second time whether a package bearing the ORM-D marking contained

hazardous materials).)  Regarding his handling of Plaintiff's package, Mr. Maurer testified that

he took Plaintiff's package and merely performed the shake test that he was required to do by the

postal regulations:

> Q:    Okay.  So did you engage in the required visual inspection of the package?
> A:    Yes.
> Q:    And did you do the shake test of the package?
> A:    I did pick it up and all that and it was very lopsided and I did shake it, yes.

(Tr. at 128.)  Accordingly, there is no credible evidence that Mr. Maurer shook Plaintiff's

package too forcefully, and, therefore, the manner in which Mr. Maurer handled her package

cannot form the basis of Plaintiff's NIED claim.

A second reason why Plaintiff cannot base her NIED claim on Mr. Maurer's alleged

rough handling of her package is because – even if Mr. Maurer shook the package too forcefully

– Delaware law does not allow a plaintiff to recover for NIED "caused solely by damage to the

plaintiff's property absent an impact or zone of danger risk even if such mental distress produces

significant physical consequences or injuries."  *Delmarva Builders*, 1998 WL 283376, at *3.  In

*Delmarva Builders*, the court discussed a hypothetical of a friend who carelessly destroyed a vase

that was a family heirloom of great sentimental value to its owner.  The court explained that the

friend would not be liable to the owner for any emotional distress the owner suffered as a result if

the owner was never in the zone of danger of physical harm.  *Id.* at *4 ("Under these facts, it is

clear that the friend is on notice of the value of the vase to its owner and could foresee the mental

anguish which the owner would suffer if the vase were to be destroyed.  But would not the damage exposure in this case be out of all proportion to the culpability of the friend in respect to a momentary, inadvertent act of omission?").  Accordingly, here, just like in *Delmarva Builders*, the United States cannot be liable for NIED even if Mr. Maurer negligently damaged Plaintiff's package because Plaintiff was never in the zone of danger of physical harm.[4]

## III.    PLAINTIFF'S NIED CLAIM ALSO FAILS BECAUSE PLAINTIFF DID NOT SUFFER EMOTIONAL DISTRESS SO SEVERE THAT IT PRODUCED PHYSICAL MANIFESTATIONS.

Plaintiff's NIED claim also fails because Plaintiff did not present any evidence at trial that she suffered emotional distress so severe that it manifested as a physical injury.  *See, e.g.*, *Lloyd*, 53 F. Supp. 2d at 676; *Lupo*, 1996 WL 111132, at *3.  As another state's supreme court explained, "[t]he 'physical injury' requirement is designed to provide some guarantee of the genuineness of the claim in the face of the danger that claims of mental harm will be falsified or imagined."  *Czaplicki v. Gooding Joint Sch. Dist. No. 231*, 775 P.2d 640, 646 (Idaho 1989) ("Physical manifestations of the emotional injury enable a plaintiff to posit a claim for negligent infliction of emotional distress.").[5]  Thus, "where the physical phenomena accompanying emotional disturbance are transitory and non-recurring they do not amount to the physical injury needed for recovery under a negligent infliction of emotional distress claim."  *Lloyd*, 53 F. Supp.

---

[4]Plaintiff asserts that *Delmarva Builders* "is not helpful to the Defendants in this case," apparently because – according to Plaintiff – the zone-of-danger test does not apply to this case. (Pl.'s Br. at 10.)  As explained above, Plaintiff is wrong.  The zone-of-danger test does apply, and, because it was not met, Plaintiff's NIED claim should be dismissed.

[5]*See also Garvis v. Employers Mut. Cas. Co.*, 497 N.W.2d 254, 257 (Minn. 1993) ("Because emotional distress is highly subjective, often transient, and easily alleged, our tort law, in addition to a 'zone of danger' requirement, also requires physical manifestation of the distress as proof of the genuineness and gravity of the emotional suffering.").

at 676 (quoting RESTATEMENT (SECOND) OF TORTS § 436A, cmt. c); *see also Lupo*, 1996 WL

111132, at *3 (same).

   Here, Plaintiff did not present any evidence that her alleged emotional distress manifested

as a physical injury.  For example, Plaintiff did not testify that Mr. Maurer caused her to be so

emotionally distressed that she suffered sleep problems, anxiety or depression.  Of course, even if

Plaintiff *had* offered such testimony, that *still* would not be enough to show that she suffered

emotional distress severe enough to make out a claim for NIED.  *See, e.g.*, *Hostetter v. Hartford*

*Inc. Co.*, No. 85C-06-28, 1992 WL 179423, at *10 (Del. Super. Ct. July 13, 1992) (dismissing

NIED claim because all the plaintiff alleged was that she "experienced sleep problems due to

nightmares, anxiety, depression, increased cigarette and alcohol use" which did not constitute

sufficient physical manifestations of her alleged emotional distress).

   What Plaintiff does claim is that after the incident she was "crying."  (Tr. at 40.)

Obviously, the fact that Plaintiff cried is not evidence of a physical injury sufficient to show that

her alleged emotional distress was severe and genuine.  Plaintiff then claims that she left the post

office and tripped and fell.  (*Id.* at 41.)  Plaintiff goes on to describe injuries she received from

her fall.  (*Id.* at 47-54.)  According to Plaintiff, the injuries she received from falling are

sufficient to show the physical injury that Delaware requires for NIED claims.  (Pl.'s Br. at 9.)

Plaintiff is wrong.

   Delaware – like many other states – requires those seeking compensation for emotional

distress to show that their emotional distress manifested as a physical injury in order to provide

some objective indicia that the alleged emotional distress is severe and genuine.  *See, e.g.*, *Robb*,

210 A.2d at 458 ("[I]t is accepted as settled that there can be no recovery for fright alone, not

16

leading to bodily injury or sickness, arising from the negligence of another."); *Czaplicki*, 775 P.2d at 646.  Accordingly, the physical injury requirement is met only if the alleged injury shows that the emotional distress is severe and genuine, i.e., only if the injury is a physical phenomena accompanying the emotional distress.  *See, e.g.*, *Lloyd*, 53 F. Supp. at 675-76 (granting summary judgment and dismissing plaintiff's NIED claim because the injury to plaintiff's arm was "not a 'physical phenomena accompanying emotional distress'") (quoting *Lupo*, 1996 WL 111132, at *3).

Examples of "physical phenomena" that might suffice to satisfy the physical injury requirement include "recurring episodes of nervousness, anxiety, chest tightness, arm and hand shaking, and other mental distress."  *Wisnewski v. Jackman*, No. 03C-07-015, 2005 WL 406338, at *2 (Del. Super. Ct. Jan. 28, 2005).  The injuries that Plaintiff points to, however, are not "physical phenomena accompanying [her] emotional distress."  Instead, she points to the injuries she suffered after falling.  But, the fact that Plaintiff suffered injuries from falling does not demonstrate that her alleged emotional distress was severe or genuine – all it means is that she suffered a bad fall.  Accordingly, those injuries – which are not "physical phenomena accompanying [her] emotional distress" – do not meet the physical injury requirement.  *See, e.g.*, *Rustvold v. Taylor*, 14 P.3d 675, 680 (Or. Ct. App. 2000) ("The physical injuries on which she relies to establish her entitlement to damages for the emotional distress occurred long after that, during treatment and testing. . . .  Thus, the physical injuries on which she relies have nothing to do with the genuineness of her claimed emotional distress and fails to satisfy the physical injury

requirement."). Thus, Plaintiff's NIED claim should be dismissed.[6]

## IV.    PLAINTIFF'S NIED CLAIM ALSO FAILS BECAUSE MR. MAURER DID NOT BREACH ANY DUTY OF CARE THAT HE OWED TO PLAINTIFF.

### A.    Mr. Maurer Complied With His Duty Of Care Because He Did Not Engage In Outrageous Conduct.

As explained above, some lower Delaware courts have recognized a possible exception to the zone-of-danger test that allows a plaintiff to seek compensation for emotional distress – as an element of damages – when the defendant committed some tort that is independent of the NIED claim. Accordingly, those courts have held that the zone-of-danger test does not apply when plaintiffs seek compensation for emotional distress caused by medical malpractice, sexual harassment, assault and battery and false imprisonment. *See, e.g.*, *Lupo*, 1996 WL 111132, at *3 (medical malpractice); *Drainer*, 1995 WL 338700, at *3 (sexual harassment); *Lloyd*, 53 F. Supp. 2d at 675-76 (assault and battery and false imprisonment).

Here, however, Plaintiff was unable to prove that Mr. Maurer breached a duty of care owed to Plaintiff that was independent of her NIED claim. Plaintiff *tried* to prove that Mr. Maurer breached a duty of care that he owed to Plaintiff when she tried to prove that he engaged in outrageous conduct towards her. The Court, however, disagreed, and ruled that Plaintiff failed to make out an intentional infliction of emotional distress claim:

---

[6]In *Rustvold*, the plaintiff claimed she suffered emotional distress after she was negligently exposed to HIV and Hepatitis B. To satisfy the NIED physical injury requirement, the plaintiff pointed to injuries she sustained during her testing and treatment for those diseases – injuries that clearly were a consequence of the alleged negligence. However, the court found that those injuries did not satisfy the physical injury requirement because they had nothing to do with the genuineness of the plaintiff's alleged emotional distress. Similarly, here, even if Plaintiff's physical injuries could be considered a consequence of Mr. Maurer's alleged negligence, those injuries still would not satisfy the physical injury requirement because they have nothing to do with the genuineness of Plaintiff's alleged emotional distress.

> I conclude that the plaintiff has failed to demonstrate an intentional infliction of
> emotional distress because, even taking everything she says as true, the alleged
> conduct does not constitute extreme and outrageous conduct beyond all possible
> bounds of decency, atrocious and intolerable to a civilized community.  It simply
> does not.  At best, it was very rude.

(Tr. at 143-44.)

Having failed to prove intentional infliction of emotional distress, Plaintiff is now trying

to use the same allegedly "very rude" conduct by Mr. Maurer to make out a claim for NIED.  In

other words, Plaintiff's (misguided) theory is that Mr. Maurer was "rude" and, therefore,

"negligent."  The problem with Plaintiff's approach is that if she succeeds, she will make hollow

the Court's ruling that Mr. Maurer's allegedly "very rude" conduct was not tortious because it

did not rise to the level of intentional infliction of emotional distress.

A similar issue was faced by the Court of Appeals of Texas in *Wal-Mart Stores, Inc. v.

Medina*, 814 S.W.2d 71 (Tex. App. 1991).  In *Wal-Mart Stores*, the plaintiff was fired from her

job at Wal-Mart after being accused – according to her, falsely – of theft.  The plaintiff then sued

Wal-Mart for malicious prosecution and NIED; the jury found in favor of Wal-Mart on the

malicious prosecution claim but in favor of the plaintiff on her NIED claim.  Wal-Mart appealed,

arguing that its conduct "should be measured by the standards applied in the tort of malicious

prosecution, and not negligence" and that "negligence is not a cause of action upon which [the

plaintiff] may recover since it owed no duty of care to [the plaintiff] under traditional theories of

negligence independent of that set forth in the tort of malicious prosecution."  *Wal-Mart Stores*,

814 S.W.2d at 72-73.

The court agreed with Wal-Mart's argument and dismissed the NIED claim.  The court

explained that "[a]ctions for malicious prosecution are not favored in the law" and that "the tort

19

of malicious prosecution balances a citizen's duty to assist the police against the potential for

injury to an innocently accused person." *Id.* at 73.  The court further explained that the "gist of

[the plaintiff's] case was clearly to seek recovery for injuries caused by the [allegedly malicious]

prosecution." *Id.* at 74.  However, because the jury found that the plaintiff had not made out a

case for malicious prosecution, the court held that it would be "improper" to "apply principles of

negligence" and thereby hold Wal-Mart tortiously liable for conduct that fell short of malicious

prosecution.  *Id.*

      For the same reasons discussed in *Wal-Mart Stores*, here it would not be proper to hold

the United States tortiously liable for Mr. Maurer's allegedly "very rude" conduct under a

negligence theory, given that the Court has already ruled that conduct was not so outrageous so

as to constitute intentional infliction of emotional distress.  The tort of intentional infliction of

emotional distress – like malicious prosecution – balances competing policy interests, namely,

the right of citizens to engage in what some might deem to be rude conduct versus the right of

citizens to not be injured by conduct that is "so outrageous in character and so extreme in degree,

as to be beyond all possible bounds of decency, and to be regarded as atrocious and utterly

intolerable in a civilized community."  *Avallone v. Wilmington Med. Ctr., Inc.*, 553 F. Supp. 931,

938 (D. Del. 1982) ("[L]iability clearly does not extend to mere insults, indignities, threats,

annoyances, petty oppressions, or other trivialities. . . . [P]laintiffs must necessarily be expected

and required to be hardened to a certain amount of rough language, and to occasional acts that are

definitely inconsiderate and unkind.") (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt.

d).  Delaware has decided that its citizens should not be tortiously liable when – as is the case

here – they engage in conduct falling short of outrageousness (assuming, of course, those citizens

do not breach some other duty of care).[7]

Here, the Court already ruled that Mr. Maurer's conduct was not outrageous. The gist of Plaintiff's NIED claim is the same as her intentional infliction of emotional distress claim, namely, that Mr. Maurer was rude to Plaintiff causing her to get upset. Given that Mr. Maurer's allegedly "very rude" conduct was not tortious under the intentional theory, it cannot be tortious using a negligence theory. To rule otherwise would undermine Delaware's decision to allow its citizens to engage in conduct that falls short of outrageousness. Accordingly, given that Plaintiff failed to make out a claim for intentional infliction of emotional distress, her NIED claim must also fail.

**B.     The USPS's Training Video Did Not Create A Standard Of Care.**

In her brief, Plaintiff argues – without citing any legal authority – that the USPS's training video creates a standard of care and that Mr. Maurer violated that standard of care. (Pl.'s Br. at 5.) Plaintiff also claims – again, without any legal authority to back her up – that Mr. Maurer "breached his duty to act in a reasonable manner to his customers." (Pl.'s Br. at 7.) Both arguments should be rejected.

First, as explained above, the only duty of care that Mr. Maurer owed Plaintiff – in the context of this incident – was to not cause her emotional distress by engaging in conduct that was "so outrageous in character and so extreme in degree, as to be beyond all possible bounds of

---

[7]If it were possible for someone to be negligent (and therefore liable in tort) simply by being rude, one can imagine the long line that would form outside the Delaware courts of people seeking legal redress for rude conduct inflicted upon them. Thankfully, Delaware (as well as every other state) has decided that conduct that is merely "rude" is not actionable – rather, the challenged conduct must rise to a level of outrageousness sufficient to constitute intentional infliction of emotional distress.

decency, and to be regarded as atrocious and utterly intolerable in a civilized community."
*Avallone*, 553 F. Supp. at 938. The Court held that Mr. Maurer met this duty of care.

Second, the notion that the USPS's training video could heighten Mr. Maurer's duty of care from a duty not to engage in outrageous conduct to a duty to be polite is simply wrong. If that were the case, then any company that adopted a policy requiring its employees to be polite to customers would be liable if one of its employees was rude – thereby violating the policy – and caused a customer to become upset. Obviously, that is not the law, nor should it be. The law should not discourage companies from adopting policies that require their employees to be polite to customers. Accordingly, because Mr. Maurer did not violate any duty of care that he owed to Plaintiff, Plaintiff's NIED claim should be dismissed.[8]

## V. PLAINTIFF'S NIED CLAIM FAILS BECAUSE, EVEN IF MR. MAURER BREACHED A DUTY OF CARE OWED TO PLAINTIFF, PLAINTIFF'S OWN NEGLIGENCE AND OTHER UNFORESEEABLE CIRCUMSTANCES WERE THE SUPERVENING CAUSES OF HER PHYSICAL INJURIES.

In Delaware, a defendant will not be liable – even if he or she is negligent – if the injury at issue is caused by another person's negligent acts or other events that were not foreseeable by the defendant. *See, e.g.*, *Chinski v. New Castle County Vocational & Tech. Sch. Dist.*, No. 92C-05-009SCD, 1995 WL 790997, at *6 (Del. Super. Ct. Dec. 5, 1995). In this case, Plaintiff's injuries were caused by her fall, which in turn was caused by, according to Plaintiff, the fact that she tripped over a cement parking stopped partially obscured by her car:

Q:    So tell us what happened then.

_____

[8]To further highlight why the USPS's training video does not create a duty of care, query whether the United States could be liable for NIED if Plaintiff became upset because Mr. Maurer technically violated postal regulations when he crossed out the ORM-D marking as a *favor* for Plaintiff.

> A:  Well, I went down the steps, *and then there's a cement boulder and my husband's car was parked right near it. And I caught my right toe on that end of the boulder. . . . And I - - I just flew. I just - - just took off and I landed on my stomach and my face and my knee.* And I was unconscious for a while.

(Tr. at 41 (emphasis added).)

Later, Plaintiff again explained that the cement parking stopper was obscured by her car, and also suggested that she tripped over it because the sun was shining and she was walking with her head down while wiping away tears:

> Q:  And that's the cement block you tripped over, isn't it?
> A:  Mm-hmm. Yes.
> Q:  Okay. *And when your husband had parked his car there, his car was mostly obscuring the cement block; right?*
> A:  *Well, maybe he was probably seven or eight inches away. You know, just stuck out like this.*
> Q:  There's just a little bit of block sticking out from under your husband's car; right?
> A:  I imagine seven or eight inches.
> Q:  Okay. And it was also hard to see the block because of the sun; right?
> A:  I don't know if it was sunny that day out or not.
> Q:  It was a beautiful day that day, wasn't it?
> A:  Well, it was early in the morning. I don't know. I can't remember the sun. *You know when you are crying and you go out the door, I think it's a little hard to see.*

> \*      \*      \*

> A:  *I went - - when I went - - when I was walking through, I had my head down and I had tissues in my hand, wiping my tears, and maybe the sun was shining, I don't know. Maybe it was.*
> Q:  *Okay. But on August 17th, when you gave this deposition, you thought the sun was shining, right?*
> A:  *Probably.*

(Tr. at 67-69 (emphasis added).)

Thus, according to Plaintiff, she was injured when she tripped over a cement parking stopper that she did not see because: (1) the parking stopper was sticking out only seven or eight inches from under her car; (2) Plaintiff was walking with her head down; (3) Plaintiff was

23

walking while wiping away tears; and (4) the sun was probably shining.  By law, then, the United States cannot be liable for Plaintiff's injuries – even assuming Mr. Maurer violated a duty of care that he owed to Plaintiff – unless Mr. Maurer, a postal clerk working during a "crazy" holiday season (Tr. at 102), could reasonably foresee that Plaintiff, one of his many customers, would become so upset by his performing the required inspection of her package, that she would leave the post office, carelessly walk with her head down while wiping away tears and trip over a cement parking stopper that was difficult to see because of the sun and because it was obscured by a parked car.  The United States respectfully submits that Mr. Maurer could not reasonably foresee any of those acts and circumstances, each of which caused Plaintiff not to see the parking stopper that she tripped over, injuring herself.  Accordingly, because Plaintiff's negligence and other events and circumstances were the supervening causes of Plaintiff's injuries, Plaintiff's NIED claim should be dismissed.

**CONCLUSION**

For all the foregoing reasons, the United States respectfully requests that Plaintiff's NIED

claim be dismissed.

DATED:  February 24, 2006.

<div style="margin-left:40%">

Respectfully Submitted,

COLM F. CONNOLLY
United States Attorney

By:  /s/   Patricia C. Hannigan
    Patricia C. Hannigan (De. I.D. No. 2145)
    Seth M. Beausang (De. I.D. No. 4071)
    Assistant United States Attorneys
    Attorney for the United States
    The Nemours Building
    1007 Orange Street, Suite 700
    P.O. Box 2046
    Wilmington, DE 19899-2046
    (302) 573-6277

</div>

UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LUCILLE GREENE,                    )
                                   )        C.A. No. 04-1297 (SLR)
                    Plaintiff,     )
                                   )
        v.                         )
                                   )
UNITED STATES POSTAL SERVICE,      )
                                   )
                    Defendant.     )

## CERTIFICATE OF SERVICE

I, Seth M. Beausang, hereby attest under penalty of perjury that on this 24th day of February, 2006, I caused a copy of the Defendant's Post-Trial Answering Brief to be served on the following counsel for Plaintiff by electronic filing:

John S. Grady
Grady & Hampton, P.A.
6 North Bradord Steer
Dover, DE 19904


                            _____/s/ Seth M. Beausang_____
                            Seth M. Beausang (DE I.D. No. 4071)