IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LUCILLE GREENE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 04-1297-SLR |
| | ) |
| UNITED STATES POSTAL SERVICE, | ) |
| | ) |
| Defendant. | ) |

John S. Grady, Esquire, Grady & Hampton, Dover, Delaware.
Counsel for Plaintiff.

Patricia C. Hannigan, Esquire, United States Attorney's Office,
Wilmington, Delaware.  Counsel for Defendant.

**AMENDED OPINION**

Dated: November 17, 2006
Wilmington, Delaware

*[signature]*
ROBINSON, Chief Judge

## I. INTRODUCTION

On September 24, 2004, Lucille Greene ("plaintiff") filed the present action against the United States Postal Service ("defendant") under the Federal Tort Claims Act, 28 U.S.C. § 2647, alleging intentional infliction of emotional distress and negligent infliction of emotional distress. (D.I. 1) Plaintiff's allegations stem from an incident that took place at the Post Office in Magnolia, Delaware on December 17, 2002, when she tried to mail a package containing fruitcakes. (Id.) Plaintiff avers that she became so upset from the postal clerk's behavior that, as she was leaving the Post Office, she failed to see, and subsequently tripped over, a concrete parking barrier, severely injuring herself. (Id. at ¶¶ 23-30) At a bench trial on November 7, 2005, the court dismissed plaintiff's intentional infliction of emotional distress claim and reserved judgment on the negligent infliction of emotional distress claim. (D.I. 34 at 144) Post-trial briefing was completed on March 3, 2006. The court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346(b)(1). The following constitute the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

## II. FINDINGS OF FACT

1. This case requires a determination of liability for injuries suffered by plaintiff when she fell outside the Magnolia Post Office on December 17, 2002.

2. At the time of trial on November 7, 2005, plaintiff Lucille Greene was 87 years old. (D.I. 34 at 30) Prior to her fall at the Post Office, plaintiff was a fairly active person but suffered from an eye condition called macular degeneration. (Id. at 31-32) Plaintiff routinely baked and mailed fruitcakes to friends and family during the holiday season. (Id. at 33-35)

3. James P. Maurer ("Maurer") was an employee at the Magnolia Post Office in late 2002. (Id. at 125) He had worked for defendant since July 1998 and, at the time of plaintiff's fall, was working as a "distribution and window clerk." (Id.)

4. On December 17, 2002, at approximately 9:15 in the morning, plaintiff's husband parked his car (occupied by himself, plaintiff, and plaintiff's son) in a space outside the Magnolia Post Office. (Id. at 37) Plaintiff entered the Post Office and attempted to mail a box containing fruitcakes. (Id. at 37-38)

5. Defendant's policy requires its employees to ask customers whether the packages they are trying to mail contain anything "liquid, fragile, perishable or potentially hazardous." (Id. at 88) Likewise, postal employees must conduct a visual inspection of the package, check its delivery and return addresses, and shake it to see if there is anything unusual about its contents. (Id. at 87-88) If "ORM-D" is marked on the box (as it was on plaintiff's), the employee must inquire further as to the box's contents and have the customer cross out the marking

once the employee is satisfied with the customer's explanation. (Id. at 92-93)  Several pamphlets and posters are available at the Post Office to help customers understand defendant's procedures.  (Id. at 100-01)

    6.    Maurer followed the above-named procedures with respect to plaintiff's package (with the exception of marking out "ORM-D" himself), although he was likely being less than courteous at the time.[1]  (Id. at 128-29)

    7.    Maurer's actions, whether proper or improper, upset plaintiff to the point where, as she left the Post Office, she was crying.  (Id. at 40-41)  On her way back to the car, plaintiff tripped over part of a concrete parking barrier that was jutting out from under her husband's car.  (Id. at 41)  Plaintiff fell, breaking her ring and glasses and injuring, among other things, her face and knee.  (Id. at 47-51)  Plaintiff then

---

[1] During trial, plaintiff repeatedly contradicted her prior testimony from a deposition and from earlier in the trial itself. (See, e.g., D.I. 34 at 60, 68-69, 75-76)  She identified her signature on a statement that she had dictated to her granddaughter, and then claimed that neither the statement nor the signature were hers.  (Id. at 46-47, 56-57)  The court finds that, while it may have seemed to plaintiff as though Maurer was harassing her with questions about explosives (id. at 38), he was asking the standard questions (with which plaintiff was admittedly unfamiliar) about whether the package contained anything liquid, fragile, perishable or potentially hazardous. Likewise, plaintiff did not understand why the markings on her box were being scrutinized so closely (id. at 54); when Maurer tried to point out a poster explaining defendant's procedures for ORM-D markings on reused boxes, plaintiff either could not see it or would not look.  (Id. at 28-29)

proceeded to drive to Wilmington with her son and husband to attend her son's appointments at the VA Hospital. (Id. at 42)

8. As a result of her fall, plaintiff paid a number of medical and repair bills and had surgery on her leg, which has not fully healed. (Id. at 47-51) Her range of activities has decreased and she must now pay others to help her with her house and yard work. (Id. at 52-53)

9. Defendant has not disciplined Maurer in connection with the December 17, 2002 incident, and its investigating agent did not believe Maurer had done anything wrong. (Id. at 105, 112) Defendant has not apologized to plaintiff for her bad experience at the Magnolia Post Office. (Id. at 117)

### III. CONCLUSIONS OF LAW

In order to make a successful claim for negligent infliction of emotional distress under Delaware law, a plaintiff must be able to prove: (1) negligent conduct that proximately causes emotional distress; and (2) the emotional distress is accompanied by non-transitory, recurring physical phenomena.[2] See Lupo v. Medical Ctr. of Del., Inc., No. Civ. A. 94-C-09-049, 1996 WL 111132, at *3 (Del. Super. Feb. 7, 1996). Where a plaintiff is claiming under Delaware law that her emotional distress was

---

[2]Because plaintiff claims that she has suffered direct injuries due to defendant's negligence, the court will not address those emotional distress cases which analyze the "zone of danger" test.

4

directly caused by another's negligence, the plaintiff must show that the actor's negligent conduct created "an unreasonable risk of causing . . . emotional disturbance to another." Id. "In addition, [the plaintiff] must show that the distress was sufficient to cause physical injury." Lloyd v. Jefferson, 53 F. Supp. 2d 643, 675 (D. Del. 1999).

Although plaintiff has demonstrated that she was upset by Maurer's conduct, plaintiff has failed to demonstrate, by a preponderance of the evidence, that Maurer's conduct created "an unreasonable risk of causing" such emotional distress. There has been no case cited where merely rude behavior on the part of a public servant has been found to satisfy this test.

Plaintiff has also failed to demonstrate that the physical injuries sustained in her fall can be appropriately characterized as physical phenomena "accompanying" her emotional distress. For instance, in the extensively cited Lupo case, the court explained the requirement for "legally recognized physical injuries" by reference to The Restatement (Second) of Torts § 436A(c):

> The rule stated in this Section applies to all forms of emotional disturbance, including temporary fright, nervous shock, nausea, grief, rage, and humiliation. The fact that these are accompanied by transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and the like, does not make the actor liable where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm. On the other hand, long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance, as for example in the case of

>repeated hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character. This becomes a medical or psychiatric problem, rather than one of law.

Lupo, 1996 WL 111132, at *3. It is undisputed that the physical injuries of which plaintiff complains were directly caused by her fall which occurred subsequent to her encounter with Maurer. Whether or not her fall was proximately caused by her emotional distress, the court finds that her injuries cannot be characterized as those "accompanying" plaintiff's emotional distress. See Lloyd, 53 F. Supp. 2d at 675-76 (holding that plaintiff's physical injuries were the direct result of defendant's gripping her arm, not the "physical phenomena accompanying emotional disturbance" caused by plaintiff's encounter with defendant).

IV. CONCLUSION

**The conduct under scrutiny at bar does little to enhance the reputation of the USPS, and it is unfortunate that such conduct was not informally addressed by defendant.[3] Nevertheless, for the reasons set forth above, the court finds that plaintiff has failed to establish that defendant is liable for negligent infliction of emotional distress. An appropriate order shall issue.

---

[3]An apology, apparently, is an obsolete gesture in our contemporary American culture.

6